Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the

District of South Dakota

Western Division

|  |  |
|---|---|
| Starla F Russell <br> *Plaintiff(s)* <br><br> -v- <br><br> Rapid City Area Schools, <br> Rapid City Area Schools Board of Education, and <br> RCAS Board of Education President Matt Stephens in his official capacity, and <br> Western Dakota Technical Institute, and WDT President Ann Bolman in her official capacity <br> *Defendant(s)* | Case No. 18-5015 <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☒ Yes ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   | | |
   |---|---|
   | Name | Starla F Russell |
   | Street Address | 1938 Lincoln Ave |
   | City and County | Hot Springs    Fall River County |
   | State and Zip Code | South Dakota   57747 |
   | Telephone Number | 605-890-2110 |
   | E-mail Address | starlarussell@yahoo.com |

B. **The Defendant(s)**

Defendant No. 1

| | |
|---|---|
| Name | Rapid City Area Schools (RCAS) |
| Job or Title *(if known)* | |
| Street Address | 300 6th Street |
| City and County | Rapid City    Pennington County |
| State and Zip Code | South Dakota    57701 |
| Telephone Number | 605-394-4041 |

Defendant No. 2

| | |
|---|---|
| | Rapid City Area Schools Board of Education (RCAS Board) and |
| Job or Title *(if known)* | Matt Stephens in his official capacity as President |
| Street Address | 300 6th Street |
| City and County | Rapid City    Pennington County |
| State and Zip Code | South Dakota    57701 |
| Telephone Number | 605-394-4041 |

Defendant No. 3

| | |
|---|---|
| Name | Western Dakota Technical Institute (WDT) and |
| Job or Title *(if known)* | Ann Bolman in her official capacity as President |
| Street Address | 800 Mickelson Dr |
| City and County | Rapid City    Pennington County |
| State and Zip Code | South Dakota   57703 |
| Telephone Number | 605-718-2407 |

C. **Place of Employment**

| | |
|---|---|
| Name | Western Dakota Technical Institute (WDT) |
| Street Address | 800 Mickelson Dr |
| City and County | Rapid City    Pennington County |
| State and Zip Code | South Dakota  57703 |
| Telephone Number | 605-718-2407 |

II. **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

☒   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

☐   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

| | | |
|---|---|---|
| ☒ | Other federal law *(specify the federal law)*: | |
| | 42USCS §2000e-3(a) | |
| ☒ | Relevant state law *(specify, if known)*: | |
| | SDCL 13-39-65 (in effect in 2016) | |
| ☐ | Relevant city or county law *(specify, if known)*: | |

## III. Statement of Claim

Plaintiff opposed the unlawful employment age discrimination in which the Defendants were engaged and 1.) made public statements to that effect; 2.) made an admission to the Defendant WDT that Plaintiff was the source of the age discrimination statement; and 3.) Defendant WDT defended their practice to their accreditation body based upon the statement made by the Plaintiff.

Defendants retaliated against the Plaintiff based upon her opposition to age discrimination by harassing Plaintiff, providing a hostile work environment, changing the scope and conditions of her employment, and ultimately perfected age discrimination against Plaintiff by appointing and giving Plaintiff's job responsibilities to an employee below the age protected class and terminating Plaintiff's employment.

Plaintiff was not given consideration for transfer or for other openings, or to apply for vacant positions, as Plaintiff was entitled to under Article VII of the 2015-16 Negotiated Agreement. Plaintiff was not given written notice of her termination or intent to non-renew as required by SDCL 13-39-65 and directly prejudiced Plaintiff thereby. Plaintiff was caused harm and Defendants violated Plaintiff's rights culminating in Plaintiff's termination on April 6, 2016, by:

1. Defendants changing the title of Plaintiff's position, appointing a staff member below the protected age group, and terminating the Plaintiff's employment.

2. Defendants engaging in a similar pattern of "eliminating" positions of age-protected employees by changing the title of the positions and/or combining positions, and then selecting or appointing younger employees, not in the protected age group. Additionally, Defendants resurrecting the "eliminated" positions a short time after the age-protected employees who held them were terminated.

3. Defendants holding meetings and discussions with other employees and departments to change the scope of the Plaintiff's responsibilities by reassigning Plaintiff's job responsibilities to other staff and departments all while Plaintiff was still employed by Defendants.

4. Defendants WDT refusing to attend meetings or not responding to Plaintiff when she requested meetings with the Defendant WDT to discuss changes in programming or assignments.

5. Defendant WDT instructing Plaintiff's colleagues and their subordinates to run reports and provide information to them about projects performed by Plaintiff, and requesting the subordinates not relay that to Plaintiff.

6. Defendant WDT publicly recognizing every department and/or staff except for the Plaintiff's department and staff during a recognition program held in front of all employees.

7. Defendant WDT making derogatory remarks about the Plaintiff's office operations during Cabinet meetings in front of other employees and departments.

8. Defendant WDT shunning Plaintiff's department and staff by excluding goals and outcomes in the Strategic Planning Outcomes document, despite Plaintiff providing the requested documents to Defendant WDT.

9. Defendant WDT intimidating the Plaintiff by agreeing to meet with Plaintiff after she requested such meeting, but when Plaintiff appeared, Defendant WDT requested the HR Manager's presence, and Defendant WDT would not allow the meeting to occur without the presence of the HR Manager.

10. Defendant WDT misleading the Plaintiff regarding intent not to reorganize or make major changes, while negotiating with consultant simultaneously, and misstating the consultant's purpose.

11. Defendant WDT and their consultant undermining and preventing Plaintiff from supervising and leading her staff when they met and consulted with Plaintiff's employee in secrecy.

12. Defendants making unfounded claims that Plaintiff was deficient in completing work after her termination.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☒ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*: Failure to transfer to openings or apply for vacant positions per the 2015-16 Negotiated Agreement

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

Culminated on April 6, 2016, through the termination of Plaintiff's employment, and including actions prior thereto which created a nexus between the date of termination and the prior unlawful actions to that time.

C. I believe that defendant(s) *(check one)*:

- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.      Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☒ age *(year of birth)*    1970    *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E.      **Statement of Facts**

Plaintiff was employed at Western Dakota Technical Institute (WDT) as the Federal Financial Aid Administrator (FAA) from October 14, 1999 to April 6, 2016. Plaintiff had never received any derogatory remarks or unfavorable personnel evaluations during her employment at WDT.

In May 2015, Plaintiff stated her concern about Defendant's practice of reconfiguring long-time employees who were nearing retirement age, but had not announced they were retiring, out of their positions, in violation of the civil rights act, at an open meeting with the Higher Learning Commission (HLC) visiting team members. Plaintiff made public this concern after Plaintiff's supervisor informed Plaintiff that the salaried position held by an employee who had served for the past approximately 27 years was being eliminated and would be replaced by an hourly employee. Plaintiff's supervisor stated that the position was being evaluated at that time because that long-time employee was eligible for early retirement.

In August 2015, Defendants received the HLC Visiting Team report which cited many deficiencies, recommended the Defendants be placed on probation, and, among other items, referenced Plaintiff's stated concern about age discrimination. Defendants assembled a Rapid Response team comprised of WDT faculty and staff, whose members were tasked with addressing the report's findings and tracking down certain statements made to the HLC visiting team during their May 2015 visit, including Plaintiff's statement.

In October 2015, a Rapid Response Team member inquired of Plaintiff the source of the statement regarding age discrimination. Plaintiff confirmed that she was the source of the age discrimination statement.

Defendant WDT stated in January 2016 that there was no plan to re-organize WDT, rather WDT may be missing a few pieces and likely do some readjusting, but no major changes would occur. However, Defendant WDT was already in negotiations with a consultant regarding a re-organization review of the Plaintiff's staff and operations when the statement was made.

Defendants hired the consultant in February 2016, and stated multiple times a consultant was hired to assist the Defendants with preparing for a Federal Student Aid (FSA) program review should the Defendants be placed on accreditation probation by HLC. Plaintiff administered the Defendant's FSA program and had never underwent a FSA program review. Plaintiff provided all requested documentation to Defendant's consultant, however, was prohibited by Defendants from attending any meetings or discussions held between the Defendants and the consultant before, during or after the consultant's March 7-11, 2016, on-site visit. The

only meeting Plaintiff was allowed to attend were two pre-scheduled one-on-one approximate hour-long sessions with the consultant.

Plaintiff and her staff endured hostile and biased treatment by Defendants and Defendant's consultant, who provided no guidance to the Plaintiff to prepare for a FSA program review. Plaintiff was prohibited from having pertinent discussions with Defendants and Defendant's consultants to describe policies and procedures, implementation, and Plaintiff's interpretation of requisite federal student aid regulations as part of the FAA responsibilities.

Defendant's consultant held divisive meetings and interviews with other departments and staff about Plaintiff, her staff and operations. A pre-determined agenda by Defendants and their consultant to relieve the Plaintiff and certain staff she supervised of their responsibilities was instead carried out, and a defamatory report marked "Attorney Client Privilege" was presented to Defendants. Plaintiff repeatedly asked the Defendants to allow Plaintiff be a part of the review process, discussions and meetings, and was precluded. Plaintiff asked to receive a copy of the report to learn of the the consultant's review and guidance, and Defendants refused.

Defendant WDT presented Plaintiff a letter on April 6, 2016, recommending the termination of her employment to Defendant RCAS Board. Defendants stated Plaintiff was not terminated for cause; Plaintiff's position was being eliminated. Plaintiff was escorted off the property in front of co-workers, students, visitors and customers that day. Plaintiff has never received written notice from the Defendant RCAS Board of her termination or intent to non-renew pursuant to SDCL 13-39-65.

Defendants appointed the Director of Admissions, who is below the age-protected class, with Plaintiff's position responsibilities, including the FAA. Defendants did not give Plaintiff the right to request consideration for transfers to openings that may occur, and to apply for vacant positions pursuant to Article VII of the 2015-16 Negotiated Agreement.

On April 11, 2016, Plaintiff initiated the WDT grievance process. Plaintiff completed each grievance step, and requested a due process hearing, all which were denied by Defendants. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on September 29, 2016, and received a Right to Sue letter on November 24, 2017.

Unbeknownst to Plaintiff, until Plaintiff's notice of termination, Defendants had purposefully created an ever increasingly harassing, hostile, discriminatory and retaliatory working environment by utilizing untrue and defamatory statements concerning the Plaintiff's competence and abilities, purposely excluding Plaintiff from meetings and discussions, shunning and humiliating Plaintiff, misleading Plaintiff concerning utilizing consultant's services, and failing to request consideration for transfer of the Plaintiff to the available positions Defendant disclosed less than an hour after Plaintiff was removed from campus.

Defendants changed the scope of Plaintiff's employment by removing Plaintiff's responsibilities and assigning them to other staff and offices while Plaintiff was still employed. Defendant failed to create and maintain a safe working condition and environment that promotes a sense of teamwork and togetherness that allows everyone to participate in the pursuit of WDT's goals and objectives through shared governance. Plaintiff endured ever-increasing unfavorable treatment by Defendants, and culminated when the Defendant WDT recommended the termination of Plaintiff's employment on April 6, 2016, as retaliation for whistleblowing about Defendant engaging in age discrimination practices, which whistleblowing statement made it into the Defendant's accreditation visiting team report.

Defendants and their consultant have made defamatory statements in writing and to current and former staff that Plaintiff was deficient in completing work after her termination.

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

9/29/2016

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)*   11/24/2017

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

1.) $360,703.00 damages for loss of earning at WDT for the 2016-17 year and future loss of earnings;

2.) $33,000.00 damages for loss of state retirement matching benefits from employer;

3.) $16,000 damages for early retirement distribution penalty, higher taxes and insurance marketplace subsidy;

4.) Plaintiff has suffered damages for loss of reputation, pain, suffering, and mental anguish not less than $350,000.00 against each of the Defendants, and such further damages as may be hereafter sustained or ascertained;

5.) Cost of suit; and

6.) Such other further relief as may be deemed just and equitable.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2/20/2018

Signature of Plaintiff    *Starla F. Russell*

Printed Name of Plaintiff    Starla F Russell