UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STARLA F. RUSSELL,<br><br>    Plaintiff,<br><br> vs.<br><br>RAPID CITY AREA SCHOOLS, RAPID CITY AREA SCHOOLS BOARD OF EDUCATION, MATT STEPHENS, RCAS BOARD OF EDUCATION PRESIDENT IN HIS OFFICIAL CAPACITY; WESTERN DAKOTA TECHNICAL INSTITUTE, ANN BOLMAN, WDT PRESIDENT IN HER OFFICIAL CAPACITY;<br><br>    Defendants. | 5:18-CV-05015-JLV<br><br><br>REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC 74) |

## **<u>INTRODUCTION</u>**

This is an action brought by *pro se* Plaintiff Starla Russell against Defendants Rapid City Area Schools ("District"), Rapid City Area Schools Board of Education ("Board"), Rapid City Area School District Board of Education President, Matt Stephens, in his official capacity, Western Dakota Technical Institute ("Western Dakota"), and Western Dakota Tech President, Ann Bollman, in her official capacity, ("Bolman"). Defendants filed a motion for summary judgment requesting the court to grant summary judgment in their favor. (Doc. 74). In support of their motion, Defendants filed a statement of undisputed material facts. (Doc. 76). Plaintiff filed a brief opposing the motion (Doc. 99), her own Statement of Undisputed Material Facts (Doc. 100), and

1

upon being informed of the procedural error, Plaintiff filed an amended response to Defendants' statement of undisputed material facts (Doc. 106) and a sur-reply brief (Doc. 107).   Defendants filed additional reply briefs at Docket 103 and 109.

## MATERIAL FACTS

Local Rule of Civil Procedure 56.1 provides:

**A. Moving Party's Required Statement of Material Facts.**
All motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Each material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case.

**B. Opposing Party's Required Statement of Material Facts.**
A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record.  A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried.

**C. Use of Documentary Evidence.**  A party must attach to an affidavit all relevant documentary evidence in support of or in opposition to a motion for summary judgment.  The evidence should be submitted with proper highlighting or underlining as encouraged by D.S.D. Civ. LR 7.1B2.

**D. Effect of Omission: Sanction.**
All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts.

Here, the Plaintiff included a lengthy, and largely irrelevant, narrative in a pleading entitled Plaintiff's Statement of Material Facts.  (Doc. 100).  This is improper, as it precludes the court from identifying what facts are undisputed and which are disputed.  When Defendants pointed out Plaintiff's procedural

error in Docket 104, Plaintiff responded by filing Plaintiff's Amended Response to Defendant's Statement of Material Facts. (Doc. 106). However, Ms. Russell again failed to comply with Local Rule 56.1 as her responses often use the phrase, "DENY- Plaintiff lacks sufficient information to form a belief of the truth or falsity of Defendants' asserted fact." (See e.g. Doc. 106 at p. 2). At other times when Defendants would set forth short paragraphs quoting certain documents, Ms. Russell responded with long narratives discussing why the documents were in error. (See e.g. Docket 106 at pp. 11-14). Finally, Ms. Russell improperly asserts legal arguments instead of setting forth relevant facts or citations to the record.

Although Ms. Russell is a *pro se* litigant, the court has formally admonished Ms. Russell regarding the possibility of sanctions if she fails to follow the local rules. (Doc. 43). Where Ms. Russell either fails to respond with citations to the record opposing Defendants' facts, or where she opposes Defendants' facts with the phrase, "Plaintiff lacks sufficient information to form a belief of the truth or falsity of Defendants' asserted fact," the court will deem those facts as admitted.

The facts, as relevant to the pending motion,[1] are as follows:

Ms. Russell began working at Western Dakota Technical Institute ("WDT") in 1999. (Doc. 76, 106 at ¶ 1). WDT is part of the Rapid City School

---

[1] On a motion for summary judgment, the nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).

District, which is governed by the Rapid City Board of Education.  Id.  Starla's employer is the School District.  Id. at ¶ 2.  Ann Bolman is the President of WDT, and at all relevant times was acting in her official capacity as President of WDT.  Id. at ¶¶ 6-7.  Defendant Matt Stephens is President of the Rapid City Board of Education, and at all relevant times was acting in his official capacity as President of the Board.  Id. at ¶¶ 4-5.

Prior to her employment contract being non-renewed, Ms. Russell was employed as the Financial Aid Director at WDT.  Id. at ¶ 8.  Her duties as the Financial Aid Director, which is an administrative position, included monitoring and implementing federal regulations into policies and procedures relative to the Title IV Federal Financial Aid program, overall administration of approximately $8 million in campus, local, state, and federal funds, directing aid and counseling students seeking financial aid, and preparing and monitoring Title IV reporting requirements, audits, program reviews, and compliance issues.  Id. at ¶ 10.  The terms and conditions of Ms. Russell's employment were set forth in the work agreement and an employment contract.  Id. at ¶ 11.

In May of 2015, the Higher Learning Commission ("HLC"), a Regional Accreditor for degree-granting post-secondary educational institutes, visited Western Dakota and conducted a comprehensive evaluation.  Id. at ¶ 13.  During the HLC visit, the visiting team met with employees throughout WDT.  The contents of the interviews were not disclosed to WDT.  Id. at ¶ 14.  Ms. Russell appears to oppose this fact by asserting that the HLC visiting team met

4

with groups of employees, instead of each employee privately.  Id. at ¶14.  In May of 2015, a third party (STAMATS) was retained by Western Dakota to review the admissions department and make recommendations in an effort to increase enrollment.  Id. at ¶ 17.

In June of 2015, WDT received the preliminary comprehensive evaluation report prepared by HLC.  Amongst other issues of concern, the report states "According to the staff of the department, one person was told her job was eliminated because she was retirement age and the others were told there would be only one position available and they had to interview for it."  The report did not detail who made the comment.  Id. at ¶ 15; Doc. 77-6.  However, the record establishes that other employees were present when Ms. Russell made this statement.  (Doc. 101-29).  The person who Ms. Russell voiced concern was being discriminated against due to her age, MaryAnn Slanina, was never told that her position was being eliminated because she was of retirement age.  Ms. Slanina never filed an informal or formal complaint of age discrimination.  Id. at ¶¶ 18, 19.

In July of 2015, Dr. Ann Bolman was hired as the new President of WDT.  Ms. Bolman had over twenty-five years of experience in higher education.  Id. at ¶ 21.  One of Dr. Bolman's primary objectives was to increase enrollment; Dr. Bolman had suspicions that low enrollment could be associated with the functionality of the admission and financial aid departments.  Id. at ¶ 22.

In the summer of 2015, Dr. Bolman received HLC's evaluations and became was aware that WDT may be placed on probation.  Id. at ¶ 23.  Dr.

Bolman also submitted responses to the HLC report claiming numerous errors in the report.  <u>Id.</u>  One of the items addressed by Dr. Bolman was the assertion of age discrimination.

In light of the possibility of being place on probation, Dr. Bolman hired an outside consultant, Attain, LLC ("Attain") to review the financial aid operations at WDT.  <u>Id.</u> at ¶ 24.  During the week of March 7, 2016, Attain conducted a review of the financial aid operations at WDT.  <u>Id.</u> at ¶ 24.  The report of Attain provides the following:

> Attain, LLC (Attain) conducted a review of the financial aid operations at Western Dakota Technical Institute (SDTI) during the week of March 7, 2016.
>
> The financial aid office staff was cautious and not forthcoming with the exception of a 27-year veteran Senior Financial Aid Assistant. Currently the financial aid office (FAO) is under the leadership of a director who seems to rule every aspect of the process without suggestion or input from others.  The FAO operates on its own timetable without regard to the urgent nature of this competitive industry.  For example, students applying for school after July 30th, are told they need to get on a payment plan as their financial aid will take "up to 6 weeks to process".  This is an unrealistic timetable and adding the burden to the student is unreasonable.  The school is facing steady decline in new starts and this philosophy will only exacerbate the issue.
>
> The FAO appears to be overstaffed even with the new process of certifying VERTERANS ADMINISTRATION students.  There also appears to be a lack of cooperation and collaboration between the financial aid staff and other departments, thereby making a "One-Stop" process tenuous at best.
>
> The most significant compliance issues that must be addressed pertain to Satisfactory Academic Progress (SAP) and potential biased processes. Students are required to submit documents, not federally required, that appear targeted at specific demographics of students, and when those documents are received, the Institutional Student Information Records are not updated thereby facilitating additional conflicting information.

6

<u>Id.</u> at ¶¶ 25-27; Doc. 77-8 at p. 4.  Ms. Russell opposes these statements of fact by arguing that Attain's findings were in error; that Attain's consultants were hostile and accusatory toward Plaintiff and the Student Accounts staff; that Attain held divisive meetings with staff about Plaintiff and the financial aid operations; that Attain relied heavily on discrediting Plaintiff; that Plaintiff didn't have an opportunity to be involved in the review process or rebut their findings.  (Doc. 106 at pp. 10-15).  While Ms. Russell believes that Attain's findings were incorrect in their assessment, she fails to cite to anything in the record that these were not the findings of the third-party consultant.

Attain concluded that the Financial Aid Office was overstaffed and recommended a reconfiguration.  <u>Id.</u> at ¶ 28.  The previous four full time positions were eliminated, and three new positions: Senior Student Finance Specialist, Student Finance Specialist, and Enrollment Manager Director were created to replace the previous four.  <u>Id.</u>  The Financial Aid Director position, which was held by Ms. Russell, was eliminated.  <u>Id.</u> at ¶ 29.

Ms. Russell asserts that Jill Elder, then age 35, (previously Director of Admission) was unilaterally transferred into the new interim Director of Enrollment Services position.  Ms. Russell claims she was never given the right to request consideration of a transfer for this opening or any of the new positions in violation of her WDT Work Agreement.  (Doc. 106 at pp. 15-16).

On April 6, 2016, Dr. Bolman notified Ms. Russell:

[Western Dakota] has determined that it is necessary to reconfigure financial aid to create a student-centered one-stop shop and to improve operational efficiency and effectiveness.  As a

result, this is to notify you that . . . I am recommending to the
Board of Education that your employment contract with Western
Dakota be terminated.

Id. at ¶ 29.   The Board approved the recommendation on April 11, 2016.

Plaintiff was 46 years old.  Ms. Russell initiated the WDT Grievance procedure

the same day.  WDT determined that no violation of the negotiated agreement

occurred.  Ms. Russell never appealed any decision of the Board, nor the

outcome of the grievance process to the Circuit Court.  Id. at ¶ 32, 39, 40.

Several weeks after the non-renewal of her contract, Ms. Russell, along

with five other applicants, applied for the newly created Financial Aid

Coordinator position.  Id. at ¶ 35.  Sharon Martin, age 54, an employee with

more than 25 years of experience with Western Dakota Tech, was hired for the

position.  Id. at ¶ 35.  Ms. Russell admits that she is not making a claim in this

litigation that she was not selected for coordinator position because of her age.

Id. at ¶ 37; Doc. 106 at p. 19.

At no time during Ms. Russell's employment at WDT did she ever file any

informal or formal age discrimination complaint.  (Doc. 76 at ¶ 42).  In

opposition to this, Ms. Russell replies, "Plaintiff and the financial office staff

experienced WDT Administrations nonresponsiveness [sic] and intimidation as

the harassment claim filed by Plaintiff and the Financial Aid Office staff in

September 2012 was not resolved.  However, Theresa Scharn (Scharn), Human

Resources Manager, attempted to use Plaintiff's claim to assist in the

termination of the employment of the accused in 2015."  (Doc. 106 at p 23;

Doc. 100 at ¶ 20).  Although not clear from the record given Ms. Russell's

passing reference, it appears that Ms. Russell filed a grievance about a co-worker in 2012, which she didn't believe was adequately handled by the Human Resources Manager.  There is no indication in the record that these were age related complaints.

Ms. Russell filed a Charge of Discrimination with the EEOC on October 25, 2016.  The EEOC closed its file and issued a Right to Sue letter on November 20, 2017.  Ms. Russell filed suit in federal court on February 20, 2018.  (Doc. 1).

## **STANDARD OF REVIEW**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (stating that each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247–48.

## DISCUSSION

## I.    Claims against Dr. Ann Bolman and Matt Stephens

Defendants ask the court to grant summary judgment in favor of Dr. Bolman and Matt Stephens since they are both sued in their official capacity. (Doc. 75 at pp. 13-14).  Furthermore, Defendants assert that the Rapid City

Area School District is the proper Defendant, since the District is Ms. Russel's employer.  Ms. Russell does not dispute these facts or arguments.

Plaintiff's Title VII and ADEA claims fail against the indiviual defendants because individual employees cannot be personally liable under Title VII or the ADEA. McCullough v. Univ. of Arkansas for Med. Scis., 559 F.3d 855, 860 n.2 (8th Cir. 2009) (citing Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist., 121 F.3d 446, 447 (8th Cir.1997) (per curiam)); Hill v. Arkansas Dep't of Human Servs., No. 4:16-CV-00872, 2017 WL 2221701, at *2 (E.D. Ark. May 19, 2017) (collecting cases); see Morrow v. City of Jacksonville, Ark., 941 F. Supp. 816, 820 (E.D. Ark.1996) ("Given the Eighth Circuit's analysis in Lenhardt, together with the near unanimity of opinion on this issue among the Courts of Appeals, this Court will follow the prevailing view and dismiss plaintiff's Title VII, ADA, and ADEA claims against defendants Hibbs and Tate in their individual capacities.").  Accordingly, the court recommends dismissal of the Title VII and ADEA claim against Dr. Bolman and Matt Stephens.

Furthermore, since Ms. Russell does not object or offer any argument or evidence that the Rapid City Area Schools, Rapid City Area Board of Education, and Western Dakota Technical Institute are not a property parties, the court recommends that they be dismissed and only the Rapid City Area School District remain as the Defendant on Plaintiff's claims.

## II.    Title VII Claim

### A. Discrimination/Hostile Work Environment

"Since [Title VII's] passage in 1964, it has prohibited employers from

discriminating against their employees on any seven specified criteria." <u>Univ. of Tex. Southwestern Med. Ctr. v. Nassar</u>, 570 U.S. 338 (2013). Five are personal characteristics: race, color, religion, sex and national origin. See 42 U.S.C. § 2000e-2. And two are "the employee's opposition to employment discrimination, and the employee's submission of or support for a complaint that alleges employment discrimination—[which] are not . . . based on personal traits but rather types of protected employee conduct." <u>Nassar</u>, 570 U.S. 338; see 42 U.S.C. § 2000e-3(a).

Defendants argue that Ms. Russell's Title VII claims should be dismissed because she does not claim any allegations of race, color, religion, sex, or national origin.  (Doc. 75 at pp. 11-12).  Ms. Russell does not dispute this.  (Doc. 105-1 at pp. 3-4).  Therefore, to the extent Ms. Russell's complaint sets forth a discrimination claim or hostile work environment claim on the grounds that she belongs to a protected group enumerated by 42 U.S.C. § 2000e-2, summary judgment should be granted.

## III.    Retaliation under Title VII and the ADEA

Title VII prohibits retaliation by an employer against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Similarly, the Age Discrimination in Employment Act ("ADEA") prohibits employers from taking adverse employment actions against employees because of their age. 29 U.S.C. § 623(a)(1).

Ms. Russell alleges that she was subjected to illegal retaliation under both the ADEA and Title VII. The analysis under each statute is the same: the McDonnell Douglas burden-shifting framework applies when no direct evidence is presented.  Jackson v. United Parcel Service, Inc., 548 F.3d 1137, 1142 (8th Cir.2008) (applying McDonnell Douglas to a Title VII retaliation claim); Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 731 (8th Cir.2002) (applying McDonnell Douglas to an ADEA retaliation claim).

To prove her claim under the ADEA, Ms. Russell must show by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009) ("[T]he plaintiff [in an ADEA case] retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."); Buehrle v. City of O'Fallon, 695 F.3d 807, 813 (8th Cir. 2012) ("Under the ADEA standard, a plaintiff must 'establish that age was the "but-for" cause of the employer's adverse action.' "

Ms. Russell may have her ADEA claim survive summary judgment "either by providing direct evidence of discrimination or by creating an inference of unlawful retaliation under the McDonnell Douglas burden-shifting framework." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1020 (8th Cir. 2011) (citing Young–Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted).   Direct evidence "demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a

13

reasonable trier of fact that the harmful adverse action as in retaliation for the protected conduct." Id.

### A. Direct Evidence

Direct evidence "demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable trier of fact that the harmful adverse action as in retaliation for the protected conduct." Id.   Direct evidence "refers to the causal strength of the proof." Richardson v. Sugg, 448 F.3d 1043, 1058 (8th Cir. 2006). The evidence "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006) (citations omitted). Direct evidence must support an inference that a discriminatory attitude was more likely than not the motivating factor in the decision. Id.

"Direct evidence usually includes conduct or statements by persons with decision making responsibilities that can be viewed as directly reflecting the employer's discriminatory attitude." Jelsma v. City of Sioux Falls, 744 F. Supp. 2d 997, 1012 (D.S.D. 2010) (citing Schierhoff, 444 F.3d at 966).

Direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993). Examples of direct evidence usually include statements

14

connected to the employee's age and the job duties.  See, e.g., E.E.O.C. v. Liberal R-II Sch. Dist., 314 F3d 920, 924-25 (8th Cir. 2002) (finding direct evidence of discrimination when a supervisor told a bus driver that he "was too old to drive a bus"); Kneibert v. Thompson Newspapers, Mich., Inc., 129 F.3d 444, 452 (8th Cir. 1997) (finding that a decisionmaker's statement to a terminated editor that he "had no use for a senior editor" and instead needed "three young editors" was direct evidence of ADEA discrimination).

Ms. Russell does not assert direct evidence of retaliation.  The only evidence relied upon by Ms. Russel is that she made a statement to a third party in May of 2015 about her concern that a co-worker's job was being eliminated because the employee was nearing retirement age.  The record is devoid of evidence that the elimination of Ms. Russell's job nearly a year later was attributable to her age.  Accordingly, the issue is whether Ms. Russel has presented "an inference" of retaliation under the McDonnell Douglas burden-shifting framework."  Pye, 641 F.3d at 1020.

### B. Inference of Unlawful Discrimination under McDonnell Douglas

Under the McDonnell Douglas framework, Ms. Russell must first establish a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  Pye, 641 F.3d at 1022 (8th Cir.2011). If the *prima facie* case is established, then the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. If this is accomplished by the

employer, the burden shifts back to the employee to put forth evidence of pretext. Id.

### 1.    Prima Facia Case of Retaliation

To establish a *prima facie* case of retaliation, the plaintiff must show (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between the adverse employment action and the protected conduct. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1051 (8th Cir. 2002).

### a.    Protected Activity

Defendants argue that Ms. Russell did not engage in a protected activity. Specifically, they argue that "[i]mplicit in the requirement that a plaintiff engage in protected activity is the requirement that the employee engage in a protected activity *to the employer*." Doc. 103 at p. 16. "An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation." Hervey v. Cty. of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008). Here, the evidence when viewed most favorable to Ms. Russell is that she made vague allegations of age discrimination in May of 2015 to HLC. The report compiled by HLC alerted Defendant to the fact that an unnamed staff member raised this concern. At least one other staff member was present when Ms. Russell made this statement. Given the size of the department and the fact that another employee was present, a reasonable jury could conclude that the employer was

16

aware that Ms. Russell made the statement constituting a protected activity. Ms. Russell has met the first element of a *prima facia* case.

### b.    Materially Adverse Employment Action

Defendants do not seem to contest that Ms. Russell suffered a materially adverse employment action.  There is no dispute that she was notified in April of 2016 that when her contract expired on June 30, 2016, her contract would not be renewed.  This court has previously found that the non-renewal of a contract constitutes an adverse employment action.  Sloat v. Rapid City Area School District No., 51-4, District of South Dakota, 5:03-cv-5057-AWB, Doc. 129.  Ms. Russell has met the second element of a *prima facia* case.

### c.    Casual connection

Defendants argue that "there is no temporal proximity between Starla's alleged opposition to discriminatory practices and the decision not to offer her a new contract." (Doc. 75 at p. 28).  Defendants assert that Ms. Russell's comment to HLC in May of 2015 and the notice of non-renewal in April of 2016, a span of eleven months, is too long to support a finding of causation. Id.  Ms. Russell does not respond to this argument.

"As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation.  The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." Tyler v. Univ. of Arkansas Bd. of Trustees,  628 F.3d 980, 986 (8th Cir. 2011); Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 645 (8th Cir.

2009) (temporal gap of seven months "not sufficiently contemporaneous" to indicate a causal connection); Recio v. Creighton Univ., 521 F.3d 934, 941 (8th Cir. 2008) (a six-month gap too long to give rise to inference of causation); Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006) (interval as brief as two months did not show causation for purposes of establishing a retaliation claim).

The court notes that Ms. Russell alleges that she expressed her concerns at a meeting with team members of the Higher Learning Commission (HLC) in May of 2015.  (Doc. 1 at p. 5, Doc. 99 at p. 8-9).  Although Defendants deny that they learned of Ms. Russell's statement until after her non-renewal, even assuming as true Ms. Russell's allegation that Defendants were aware of her statement in October of 2015, the temporal proximity is six months between the protected activity (one statement to a third party) and the adverse employment action.  The court finds that a six-month gap between the protected activity and the adverse action is far too diluted to support a causal connection.

While it is true Ms. Russell did not receive an adverse performance evaluation during the many years of employment at WDT, the record establishes that the Defendant made the decision to terminate the position at the recommendation of an independent third party that found problems existed with the financial aid department and its over staffing.  Ms. Russel's fails to present "stronger alternative evidence of causation" to overcome the delay and

resulting weakened inference of retaliation.  This court finds Ms. Russel has failed establish a causal connection and cannot make a *prima facia* case.

However, even assuming this finding is in error, Ms. Russell still cannot defeat summary judgment on the remaining two prongs of McDonnell Douglas as discussed *infra*.

### 2. Defendants proffered non-retaliatory reason

When examining the employer's articulated reason for the adverse employment action, the court's " 'inquiry is limited to whether the employer gave an honest explanation of its behavior.' " Wilking v. Cnty. Of Ramsey, 153 F.3d at 873 (quoting Harvey v. Anheuser–Busch, Inc., 38 F.3d 968, 973 (8th Cir.1994)). "Accordingly, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Id.

Defendant has set forth non-retaliatory reason for the non-renewal of Ms. Russell's contract.  The decision to eliminate Ms. Russell's position occurred after two separate third party consultants identified deficiencies in the financial aid department.  The consultant found it over staffed and recommended reconfiguring the financial aid department, including eliminating the position held by Ms. Russell.  Reduction in work force is a sufficient reason for the adverse employment action and there is no evidence that Defendant's stated reason was an illegal motive.

19

### 3.    Pre-text

"A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." <u>Gibson v. Am. Greetings Corp.</u>, 670 F.3d 844, 854 (8th Cir. 2012). There are "at least two routes" for demonstrating a material question of fact as to pretext.  "First, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." <u>Id.</u> (internal quotation marks and citation omitted).

Defendants argue that Ms. Russell cannot point to any evidence which would show that the decision to eliminate her position was merely a pre-text for age discrimination.  (Docket 103 at p. 20).

Ms. Russell argues that after her co-worker, Glen Talley, confirmed that she made the statement to HLC regarding concerns for her co-worker who was nearing retirement, she *along with the financial aid staff* were "shunned, endured hostile treatment, and [Ms. Russell] was excluded from being involved in Attain's 'review' of the financial aid operations.  (Docket 99 at p. 11). However, Ms. Russell fails to demonstrate any evidentiary connection between the statement she made to HLC (third party) and her treatment by Attain (another third party) and the recommendations made by Attain.  Furthermore, Ms. Russell's admission that the entire financial was treated poorly

undermines her argument that she was singled out for engaging in a protected activity.

Ms. Russell next argues that Defendant's shifting explanations regarding the employment decision is evidence of pretext.  (Doc. 107 at p. 6, 8-18).  Ms. Russell sets forth in detail the events leading up to MaryAnn Slanina's position reconfiguration and ultimate retirement.  (Doc. 107 at pp. 8-11).  She likens Slanina's employment situation to the elimination of Ms. Russell's position and argues that Defendant's statement to her that she was not terminated for cause, and yet later assertions by Defendants during litigation constitute shifting explanations.  While pleadings by the Defendant point out deficiencies in Ms. Russell's performance,[2] there is no evidence specifically cited by Ms. Russell which would establish pretext.

Ms. Russell also argues that Defendant failed to follow its own policies. (Doc. 107 at p. 14).  Specifically, she argues was not allowed to participate in the decision making or provide input regarding restructuring the financial aid department in violation of the Shared Governance Policy.  (Doc. 107 at pp 14-15).

"When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity." Rahlf, 642 F.3d at 638 (internal quotation marks and citation omitted). "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for [an employment

---

[2] This is an element of the Failure to Hire claim as discussed in Section V.

action]. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." <u>Haigh v. Gelita USA, Inc.</u>, 632 F.3d 464, 470 (8th Cir. 2011). (internal quotation marks and citation omitted).

The court concludes that Ms. Russell fails to present evidence which would permit a reasonable inference that her one comment in May of 2015,[3] expressing concern about what she perceived to be an age discriminatory action taken against a co-worker establishes that she was retaliated against by Defendant in March of 2016 when she was given her notice of non-renewals. This is particularly true in light of the evidence that Defendant followed an independent third party's recommendations to downsize the department. While Ms. Russell may feel improperly targeted or criticized by Attain, there is nothing in the record to support that the adverse employment action was due to her May 2015 comment.

This is not enough to prevent summary judgment because the ADEA does "not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices." <u>Haigh v. Gelita USA, Inc.</u>, 632 F.3d 464, 471 (8th Cir.2011) (emphasis added) (quoting <u>Hill v. St. Louis Univ.</u>, 123 F.3d 1114, 1120 (8th Cir.1997)).

Moreover, the employment decisions made by employers like Defendant are precisely the type of business judgment that courts hesitate to question.

---

[3] The facts when viewed most favorably to Plaintiff establish that Defendant learned of the remark in the fall of 2015.

See <u>Bone v. G4S Youth Servs., LLC</u>, 686 F.3d 948, 955 (8th Cir.2012) (stating that courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.") (quotations and citations omitted).

Because Ms. Russell did not bring forth sufficient evidence to raise a genuine issue of fact for trial on whether Defendant's stated reasons were false or that her age was the real reason her position was eliminated—her claim fails. <u>Barber v. C1 Truck Driver Training, LLC</u>, 656 F.3d 782, 791 (8th Cir.2011) (stating that the nonmovant must "set forth specific facts sufficient to raise a genuine issue for trial.") (quoting <u>Wingate</u>, 528 F.3d at 1078–79); see also <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."). As a result, Defendant is entitled to summary judgment in its favor on the Title VII and ADEA retaliation claim.

## IV.    Hostile Work Environment- ADEA claim

### A. Hostile Work Environment

To establish a hostile work environment claim, Ms. Russell must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment based on her age; (3) the harassment affected a term, condition, or privilege of her employment; (4) her employer (or immediate supervisor) knew

23

or should have known of the harassment; and (5) the employer failed to take proper action. Peterson v. Scott County, 406 F.3d 515, 523–24 (8th Cir.2005).

To determine whether the harassment affected a term, condition, or privilege of employment, a court must "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [the employee's] job performance." Sellers v. Deere & Co., 791 F.3d 938, 945 (8th Cir. 2015) (internal quotation marks omitted). This element "involves both objective and subjective components" and "requires that the harassment be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 922 (8th Cir. 2018) (internal quotation marks and alterations omitted).

"The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). The standards for a hostile work environment claim are stringent and meant to "filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language ... and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Ms. Russell is required to show "that the alleged harassment was so intimidating, offensive, or hostile that it 'poisoned the work environment.' "

24

Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (quoting Scott v. Sears, Roebuck & Co., 798 F.2d 210, 214 (7th Cir. 1986)).

For harassment to be actionable, the alleged conduct must be so extreme and severe that it changes the terms and conditions of employment and creates an abusive working environment. Faragher v. City of Boca Raton, 524 U.S. 775, 786–88 (1998); Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir.1999). The conduct must be both objectively and subjectively offensive. Peterson, 406 F.3d at 524.  In determining whether alleged harassment creates a hostile work environment, this court may consider (i) the frequency of the offending conduct, (ii) its severity, (iii) whether it was physically threatening or humiliating, and (iv) whether it unreasonably interfered with work performance. Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 630 (8th Cir.2005).

Ms. Russell belongs to a protected group under the ADEA because she was over the age of 40 when the alleged conduct took place.  Under the totality of the circumstances, Ms. Russell's hostile work environment claim does not survive summary judgment because there is no evidence in the record that any of the harassment to which she was allegedly subjected was motivated by her age or affected a term, condition, or privilege of her employment as discussed *supra*. There is evidence in the record that Ms. Russell's job duties diminished, and she claims she was "shunned."  However, this type of frustrating work situation does not constitute harassment sufficient to maintain a hostile work environment claim, but is rather akin to the "ordinary tribulations of the

25

workplace" which the stringent hostile work environment standards are meant to "filter out" from federal court claims. Faragher, 524 U.S. at 788.  Defendant is entitled to summary judgment on Ms. Russell's hostile work environment claim.

## V.    Failure to Hire

"The ADEA prohibits a covered employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age." Lee v. Rheem Mfg. Co., 432 F.3d 849, 852 (8th Cir.2005) (citing 29 U.S.C. §§ 623(a)(1) and 631(a)). The Supreme Court has stated that a plaintiff in an age discrimination action always carries the burden of showing that he or she was terminated or would have been hired "but for" his or her age. Rahlf v. MoTech Corp., Inc., 642 F.3d 633, 637 (8th Cir.2011) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)).  Defendant argues that Ms. Russell was not qualified for the Financial Aid Coordinator Position, given the findings of the Attain evaluation and because an older applicant was chosen over Ms. Russell.

First, Ms. Russell must establish a *prima facie* case of age discrimination by proving the following four elements: "(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position." Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir.2003) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Once the plaintiff satisfies the *prima facie* showing, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory

reason for its adverse employment action." <u>Rahlf</u>, 642 F.3d at 637 (citing <u>Ward v. Int'l Paper Co.</u>, 509 F.3d 457, 460 (8th Cir.2007)). Once the employer makes that showing, then the employee "must show that the employer's proffered reason was pretext for discrimination." <u>Id.</u> "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." <u>Sprenger v. Fed. Home Loan Bank of Des Moines</u>, 253 F.3d 1106, 1111 (8th Cir.2001).

Defendant does not dispute that Ms. Russell is over 40 and therefore in a protected class.  Instead, Defendant asserts that Ms. Russell was not qualified and that a younger person was hired.  The court need not address whether Ms. Russell was qualified.  Instead, the court will only address the last element which is fatal to her claim.  In Ms. Russell's Amended Responses to Defendant's Statement of Undisputed Material Facts, she admits that she applied for the Financial Aid Coordinator position; that Sharon Martin, age 54, an employee with more than 25 years of experience with Western Dakota Tech was hired for the position; and that she is not making a claim in this litigation that she was not selected for the coordinator position because of her age.  <u>See also</u>, Doc. 77-20 at pp. 14-15.  Given these admissions, Ms. Russell's failure to hire claim must be dismissed.

Ms. Russell attempts to salvage her failure to hire claim by asserting that her job duties were given to an employee (Jill Elder, age 35) below the protected age class and that Ms. Russell was not given consideration for transfers or

other openings.  As noted above, initially WDT had four full time positions in the financial aid department.  Those were reduced to three positions: 1) Senior Student Finance Specialist (later named "Financial Aid Coordinator); 2) Student Finance Specialist (later named "Financial Aid Advisor") and 3) Enrollment Management Director (later named "Admissions and Financial Aid Director." (Doc. 75 at pp. 7-8).  The position that was eliminated was Financial Director, which was the position held by Ms. Russell.

Ms. Russell claims in her pleadings that her position was given to Jill Elder after Ms. Russell was terminated. She states, "Plaintiff was still employed when they unilaterally transferred Jill Elder, Director of Admissions, into the Interim Director of Enrollment Services position . . . Upon Plaintiff's termination, Elder, age 35, was designated by WDT as the Financial Aid Administrator, and did not apply for, but was given the position of Admissions and Financial Director, the position that 'replaced' the Financial Aid Director Position."  In support of this, Ms. Russell cites EX99-GARSTEN DEPO-Baertsch Affidvait, ¶ 15, EX18-RUSSELL DEPO-Fin Aid-Admissions Dir PD, and DEPO-RUSSELL pages 61-62.  These citations to the record do not support this assertion.  See Doc. 77-20 at pp. 14-15; Doc 101-10; Doc. 101-29.

As such, Mr. Russell has failed to come forth with evidence that she applied for the position of Financial Aid Administrator or that a younger person was hired for the position and Defendant is entitled to summary judgment on the ADEA failure to hire claim.

## VI.    State Court Claim- Exhaustion of administrative remedies

Since state law notice claim statutes are inapplicable to federal civil rights actions brought in federal court Felder v. Casey, 487 U.S. 131, 140 (1988), the only remaining determination is whether Ms. Russell properly exhausted her administrative remedies on her state court claim, namely that Defendants violated SDCL § 13-39-65.  In her state court claim, Ms. Russell alleges that Defendant violated SDCL §13-39-65 by failing to provide her a written 60-day notice prior to her termination.  She also vaguely asserts a defamation claim.

Defendant moves for summary judgment arguing that the claim should be dismissed because Ms. Russell failed to exhaust her administrative remedies.  Defendant alleges that Ms. Russel was required to give notice of claim required by SDCL § 3-21-3 and because she failed to appeal the Board's decision to the Circuit Court as required by SDCL § 13-46-1.  (Doc. 75 at pp. 15-17).  There is no dispute that Ms. Russell did not file a notice of claim pursuant to SDCL § 3-21-3, nor did she exhaust her administrative remedies either by finishing the grievance process or by appealing to the state circuit court.

Ms. Russell asserts that she is not required to abide by the state notice of claim statutes because they are in applicable to federal civil rights action.  She does not address Defendant's claim that she failed to comply with SDCL § 13-46-1.  While Ms. Russell is correct that her federal civil rights claims are not subject to state notice provision, this argument is to no avail to her state court

29

claims.  Ms. Russell misconstrues the case she relies upon, Kaiser v.
Gortmaker, by construing it too broadly.  2016 WL 1215017, 1:15-CV-1030-
CBK (D.S.D. March 23, 2016).

First, as it pertains to any state court tort type claim, such as
defamation, the Kaiser court clearly states that the notice requirement of SDCL
§ 3-21-2 applies; therefore, any state tort claims asserted by Ms. Russell
should be dismissed for the failure to exhaust administrative remedies.
Second, Kaiser only addresses the notice provision of SDCL 3-21-2.  It does not
discuss the requirements of SDCL § 13-46-1, which govern Ms. Russell's state
breach of contract claim.  Neither does Ms. Russel discuss her failure to
exhaust her administrative remedies, other than her argument which is as
follows:

> [I] elected the only remedy [I] had.  The State of Dakota [sic] does
> not have a corresponding state age discrimination statute, and
> therefore, subject matter jurisdiction over age discrimination and
> retaliation, in violation of both state and federal law, with the
> EEOC within the constrained time limits.  The Plaintiff did not
> want to waive her right to litigate these federal claims by electing to
> file only the state law claims that the Department of Labor had
> jurisdiction, and knew this Court would have concurrent
> jurisdiction over the state law claims, in addition to the federal
> claims.  Again, the Plaintiff elected the remedy that preserved all
> her claims.

(Doc. 107 at pp. 5-6).  Plaintiff misconstrues the law on the failure to exhaust
administrative remedies.  South Dakota case law is clear that the court lacks
jurisdiction over state law claims when a plaintiff fails to appeal a decision of
the school board to circuit court.  Reiff v. Avon Sch. Dist. No. 4-1, 458 N.W.2d
358 (S.D 1990).

30

Accordingly, the court recommends that summary judgment be granted on Ms. Russell's state law claims.

## CONCLUSION

Based on the foregoing discussion, this Court respectfully recommends that Defendants' motions for summary judgment (Doc. 74) be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 31st day of March, 2021.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge